UNITED STATES v. PARKERSBURG BRANCH R. CO. et al.

(Circuit Court, N. D. West Virginia. February 4, 1905.)

1. BRIDGES OVER NAVIGABLE STREAMS—RIGHT OF RAILROAD COMPANY TO MAINTAIN—GRANT BY CONGRESS.

A railroad company which has built a bridge across a navigable river in full compliance with an act of Congress permitting it has a vested right to maintain the same so long as it is used for railroad purposes, of which it cannot be deprived by the courts on the ground that the bridge is an obstruction to navigation, but only by the action of Congress and on the payment of just compensation.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Navigable Waters, §§ 86, 91.]

**2. SAME—RAILROAD BRIDGES ACROSS OHIO RIVER—ACT JULY 14, 1862.**

The right of a railroad company to maintain a bridge across the Ohio river, built in conformity to Act July 14, 1862, c. 167 (12 Stat. 569) which contained no reservation of the right to alter or amend it, is not affected by any subsequent acts relating to the same subject-matter, all of which are by their terms prospective in their operation.

**3. SAME—RENEWAL OF PARTS—INJUNCTION.**

The right of a railroad company to maintain a bridge across the Ohio river, lawfully built under an act of Congress, includes the right to repair the same, when necessary to its safe use, without substantially changing the structure; and a court will not, at suit of the United States, enjoin the replacing of the superstructure by a new one resting on the same piers, where such rebuilding in no manner increases the obstruction to navigation.

In Equity. On motion for preliminary injunction.

Reese Blizzard, U. S. Dist. Atty.

Hugh L. Bond, Jr., for defendants.

JACKSON, District Judge. The United States filed their bill in this court against the Baltimore & Ohio Railroad Company and the Parkersburg Branch Railroad Company, operated by the said Baltimore & Ohio Railroad Company, and John W. Davis, receiver of the Parkersburg Branch Railroad Company, alleging that the bridge across the Ohio river, at Parkersburg, is an obstruction to navigation at that point, and a great injury to the commerce on the Ohio river. The allegations of the bill are supported by sundry affidavits, some 15 in number. The prayer of the bill is for an injunction to restrain and enjoin the defendants, their agents and all others acting under them, from constructing or proceeding to construct "the contemplated bridge across the Ohio river between Parkersburg and Belpre." To this bill the defendant companies have filed their answer, claiming that, under an act of Congress passed and approved July 14, 1862, c. 167, 12 Stat. 569, they were authorized to build and construct said bridge, subject to the terms and limitations as expressed in the act. The answer of the defendant companies alleges that a bridge was not only built and constructed in compliance with the terms and provisions of the act, but that the defendant companies did more than they were required to do, in building and constructing two channel spans instead of one, and giving greater space of waterway between the stone piers for navigation than was required by the act.

It may be conceded, and I suppose it is true, that the piers upon which the superstructure of the bridge rests are at times, especially in high flood tide, to some extent obstructions to navigation. It does not appear that they are serious obstructions in an ordinary stage of water in the river. Assuming that navigation is more or less obstructed at times, the question for the consideration of the court is, what, if any, remedy exists. In the outset of the case, it cannot be denied that a bridge was built in pursuance of the act of Congress. It is not contended that the companies have not fully complied with the terms and provisions of the act of 1862, under which the bridge was constructed. By an act of Congress passed July 11, 1870, c. 240, 16 Stat. 227, § 5, the Secretary of War was required to detail three engineers to examine the bridges across the Ohio river, and, amongst other require-

ments, to report whether any of them interfered with free and safe navigation.    In pursuance of that act the chief engineer detailed three distinguished engineers, who made and submitted to him a report which he afterwards sent to Congress.    In this report the engineers found no cause to criticise the company in the construction of this bridge, but stated in their report, as the law required only one channel space of 300 feet, that "the bridge companies are deserving of very great credit, not only in providing two spans instead of one, but in making each space between the piers eighteen feet wider than was required by law for the widest space."    This report of the engineers established the fact that the bridge was built and constructed in full compliance with the act of Congress which authorized its erection.    It would seem from this report that the government was estopped from denying that the bridge was built in compliance with the act of 1862, and that it is therefore a lawful structure.    We are therefore confronted with the question whether it can be removed upon the alleged ground "that it is a serious obstruction to navigation."    We answer "Yes," but it must be removed by the same power that granted it.    Congress alone, in the exercise of its sovereign power, can remove the bridge, but it must be upon terms that are just and right to the owners of it.    While, under our laws, private property can be taken by a sovereign when the public good requires it, yet it must be done upon just compensation.    This bridge is the private property of the defendant companies; they built it at their own cost and expense, and upon the assurance that when they did so, under the act of Congress, they had acquired a vested right of a permanent character.

It is claimed, however, that the act of Congress passed December 17, 1872, c. 4, 17 Stat. 398, superseded the act of 1862; but this act, passed subsequent to the act of 1862, as well as all the subsequent acts, cannot deprive railroad companies of their franchises acquired under the act of 1862.    In the act of 1862 there is no right reserved to alter or amend it.    It appears that every limitation or restriction in the act was fully complied with in the erection of the bridge.    The act of 1872 is not retroactive, but prospective, and was the first act in which Congress reserved to itself the right to alter or amend the acts, which reservation is found in subsequent acts relating to the bridges across the Ohio river.    It is evident that Congress did not suppose, when it passed that act, that it had the right to require any change in bridges constructed under it.    The seventh section of the act of 1872, which was the first act following the act of 1862, expressly reserved the right to alter or amend that act as to the future construction of bridges, so as to prevent or remove all obstructions to navigation; but this reservation applied only to that act, and there was no attempt on the part of Congress to repeal, in express terms, the act of 1862, if, indeed, such a power be conceded, except upon the terms of just compensation.    The same criticism is applicable to the subsequent acts of 1883 and 1890. It will be observed that the act of 1872 and all subsequent acts are prospective in their character, and do not in any way affect the rights of any of the parties who built bridges under the act of 1862.

While Congress would, as we have said, in the exercise of its sovereign power, have the right to destroy and remove this bridge, still it

has now no power to delegate that right; if it attempts to exercise the power, it must be done with a due regard for the rights of the owners of the bridge. When Congress passed the act of 1862, she said to any and all persons that the Ohio river might be bridged under the terms and provisions of the act. Therefore, when the defendant companies, in pursuance of that act, erected the bridge complained of, according to its terms and provisions, their rights became vested, of which rights Congress only could deprive them upon terms of just and equitable compensation. The bridge, being private property, could not be taken for public use, except upon indemnifying the owners for its value. The acceptance of the act of 1862 by the defendant companies, and the erection of the bridge under it, became, in law, a binding contract between the parties which this court must recognize and enforce. To hold otherwise, in the view the court takes of this case, would be unconstitutional and "impairing the obligation of contracts." McGahey v. Virginia, 135 U. S. 692, 10 Sup. Ct. 972, 34 L. Ed. 304. It is claimed, however, that the act of 1862 was merely a license to any one who wished to avail himself of the grant it contains, upon complying with its terms and provisions. I cannot concur in this position. The United States, in their sovereign capacity, passed this act, which was a grant of power to the defendant companies for the benefit of the public and to promote interstate commerce, and, so long as the property is used for the benefit of the public, the court must protect the right of the defendant companies. Of course, it follows that, when the bridge ceases to be used for the benefit of the public, the power exists to revoke the grant.

The court is asked to award its restraining order and enjoin the defendants and their agents from constructing or proceeding to construct the contemplated bridge across the Ohio river between Parkersburg and Belpre. The answer denies that they are constructing a new bridge across the river, but that the defendant companies are merely rebuilding the superstructure on the present piers and abutments, without alteration. This is shown to be the fact by the evidence filed in the case. Under the bill, answer, and exhibits in the case it does not appear that the defendant companies are building a new bridge, nor does it appear that the new superstructure in any wise affects or impedes navigation. When the new superstructure is placed in position, it will rest on the same piers upon which the present superstructure rests. What would a restraining order, if granted, accomplish? Certainly it cannot be said that the present superstructure in any respect interferes with the ordinary navigation of the river. The granting of an application for an injunction will not remove the piers in the river or the present superstructure on the piers, nor does it appear from the evidence that the new superstructure will interfere more with the navigation of the river than the present superstructure. Certainly the right to repair the bridge, to alter it or to improve it, for the safety of the public, is incident to the power to build it.

It must appear from what we have said that an injunction furnishes no remedy for the grievances complained of in the bill. This is the third application that has been made for an injunction, before the judges of this court, against the Baltimore & Ohio Railroad Company,

involving the act of 1862. Judge Goff heard the case of the United States against the Baltimore & Ohio Railroad Company, which was an application for an injunction to prevent reconstruction of the Benwood Bridge. He dismissed the bill on March 27, 1900. Judge Goff and I heard the case of the Baltimore & Ohio Railroad Company against Leidecker, one of the United States engineers, in which the same question was involved, in which, upon a review of the case decided by Judge Goff as well as the case then under consideration, we reached the conclusion that the United States could not interfere with the reconstruction of the superstructure of the bridge which was built under the act of 1862. And now we have this application, which I have under consideration, involving the same question. It would seem to me that the action of the court heretofore had in previous cases should be adhered to in this case. In all the cases the judges of this court, either sitting alone or together, have reached the conclusion that the act of 1872, and those acts subsequent thereto, do not in any wise affect the rights of the Baltimore & Ohio Railroad Company in relation to any and all of the bridges built under the act of 1862.

For the reasons assigned, the court is of the opinion to refuse the injunction in this case, and suggests that the only remedy is to apply to Congress for an act to remove the bridge, if it is such an obstruction to navigation as to justify their action, upon such terms and conditions that the Baltimore & Ohio Railroad Company should receive compensation for the destruction of the bridge.

Motion for injunction is refused.